1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11   EVAN T. B.,[1]

12          Plaintiff,

13          v.

14   FRANK BISIGNANO, Commissioner
     of Social Security Administration,
15

16          Defendant.

17

Case No. 5:24-cv-01428-JC

MEMORANDUM OPINION
AND ORDER OF REMAND

18

19   **I.    SUMMARY**

20          On July 10, 2024, plaintiff Evan T. B. filed a Complaint seeking review of

21   the Commissioner of Social Security's denial of plaintiff's application for benefits.

22   The parties have consented to proceed before the undersigned United States

23   Magistrate Judge.

24          This matter is before the Court on the parties' cross-briefs (respectively,

25   "Plaintiff's Brief," "Defendant's Brief," and "Plaintiff's Reply"), which the Court

26   _____

27          [1]Plaintiff's name is partially redacted to protect plaintiff's privacy in compliance with
     Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
28   Administration and Case Management of the Judicial Conference of the United States.

has taken under submission without oral argument. See July 10, 2024 Case Management Order ¶ 4.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about July 3, 2018, plaintiff filed an application for Supplemental Security Income (SSI) alleging disability beginning on March 22, 2000 (plaintiff's date of birth), due to "ADD" (attention deficit disorder), "ADHD" (attention deficit hyperactivity disorder), fetal alcohol syndrome, major depressive disorder, anxiety, and panic attacks. (Administrative Record ("AR") 44-45, 424-33, 464). An Administrative Law Judge (ALJ) subsequently examined the medical record and, on June 23, 2020, heard testimony from plaintiff, plaintiff's grandfather, and a vocational expert. (AR 97-129). On October 19, 2020, the ALJ determined plaintiff was not disabled since the application date. (AR 158-67).

On April 20, 2022, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings to obtain additional evidence and to: (1) proffer to plaintiff certain post-hearing evidence the ALJ considered; (2) further consider the severity of plaintiff's fetal alcohol syndrome given a 2016 assessment documenting the syndrome submitted for the first time to the Appeals Council; and (3) address plaintiff's grandfather's testimony and statements. (AR 174-76).

On remand, a new ALJ heard testimony from plaintiff (who then was represented by counsel), plaintiff's grandfather, a medical expert, and a vocational expert. (AR 39-96). On August 11, 2023, the new ALJ found plaintiff was not disabled since the application date. (AR 19-31). Specifically, the ALJ found:
///

(1) although plaintiff had worked since the application date it was not at substantial gainful activity levels (AR 21); (2) plaintiff suffered from the following severe impairments:  generalized anxiety disorder, major depressive disorder, and fetal alcohol syndrome (AR 21-22); (3) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 22-23); (4) plaintiff retains the residual functional capacity ("RFC")[2] to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[3] (AR 23-29); (5) plaintiff could perform work existing in significant numbers in the national economy, specifically router and collator operator (AR 30 (adopting vocational expert testimony at AR 63-65)); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the evidence (AR 24-25).

On May 22, 2024, the Appeals Council denied plaintiff's application for review. (AR 3-5).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting

---

[2]A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 416.945(a)(1).

[3]Specifically, the ALJ limited plaintiff to work with:  (1) no exposure to danger to life or limb or high exposed places in the workplace; (2) simple, routine, and repetitive tasks with occasional changes in the work setting; (3) no public interaction and brief, superficial interaction with supervisors and coworkers; and (4) no rapid assembly-line paced work.  (AR 23).

1  42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by

2  regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606

3  (9th Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To be considered disabled,

4  a claimant must have an impairment of such severity that he is incapable of

5  performing work the claimant previously performed ("past relevant work") as well

6  as any other "work which exists in the national economy."  Tackett v. Apfel, 180

7  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

8       To assess whether a claimant is disabled, an ALJ is required to use the five-

9  step sequential evaluation process set forth in Social Security regulations.  See

10 Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)

11 (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,

12 416.920).  The claimant has the burden of proof at steps one through four – i.e.,

13 determination of whether the claimant was engaging in substantial gainful activity

14 (step 1), has a sufficiently severe impairment (step 2), has an impairment or

15 combination of impairments that meets or medically equals one of the conditions

16 listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and

17 retains the residual functional capacity to perform past relevant work (step 4).

18 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The

19 Commissioner has the burden of proof at step five – i.e., establishing that the

20 claimant could perform other work in the national economy.  Id.

21      **B.    Federal Court Review of Social Security Disability Decisions**

22      A federal court may set aside a denial of benefits only when the

23 Commissioner's "final decision" was "based on legal error or not supported by

24 substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

25 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The

26 standard of review in disability cases is "highly deferential."  Rounds v. Comm'r

27 of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation

28 marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could

4

reasonably support either affirming or reversing the decision.  <u>Trevizo</u>, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  <u>See</u> <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if  (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Trevizo</u>, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."  <u>Trevizo</u>, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review."  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (citing <u>Treichler</u>, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  <u>Brown-Hunter</u>, 806 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  <u>See</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

///

///

1 **IV.   DISCUSSION**

2         Plaintiff contends that the ALJ erred in evaluating consultative examiner Dr.

3 Gregory Nicholson's opinion and subjective statements and testimony from

4 plaintiff and his grandfather suggesting greater limitations than the ALJ found to

5 exist.  (Plaintiff's Brief at 2-17; Plaintiff's Reply at 1-6).  For the reasons

6 explained below, the Court finds that the ALJ erred in evaluating Dr. Nicholson's

7 opinion.  Since the Court cannot find this error to be harmless, a remand is

8 warranted.

9         **A.      The ALJ Erred in Evaluating Dr. Nicholson's Opinion**

10        Dr. Nicholson provided a psychiatric consultative examination dated

11 June 19, 2019.  (AR 669-74).  Dr. Nicholson reviewed a prior consultative

12 examiner's report, some non-psychiatric records listing a fetal alcohol syndrome

13 diagnosis, and January 2019 records for depression.  (AR 669; see AR 641-46

14 (prior consultative examiner's report); AR 695-98 (January 2019 depression

15 treatment note); AR 699-700 (August 2016 note diagnosing fetal alcohol

16 syndrome with dysmorphic features with neurodevelopmental disorder associated

17 with prenatal alcohol exposure, noting plaintiff had evidence of sadness,

18 depression, and anger)).[4]  Plaintiff complained of depression from having no

19

20        [4]Consultative examining psychologist Dr. Jessica Durr provided a mental evaluation for
21 plaintiff dated October 26, 2018.  (AR 641-66).  She reviewed no records and did no testing.
   (AR 641-42).  Plaintiff complained of anxiety and depression making it difficult for him to be
22 around "a lot" of people, major panic attacks two to three times a week, and "slight" attacks daily
   since about age 11.  (AR 642).  He reported he had fetal alcohol syndrome, ADHD, abandonment
23 issues, and a history of physical and emotional abuse.  (AR 642).  He had seen a psychiatrist
24 since he was 14 years old and had seen a therapist for about a year and a half.  (AR 642).

25        Plaintiff then was a senior in high school and had been in special education since about
26 fourth grade.  (AR 643).  He had worked a seasonal job in a pumpkin patch for three Saturdays in
   2017, which he said was a lot of fun and it had been nice being able to talk to people but he "felt
27 weird doing it." (AR 643).  He was independent in his activities of daily living, could make
28 simple meals, but needed reminders to do household chores and a shopping list.  (AR 643-44).
                                                                                    (continued...)

friends, panic attacks with a history of bullying and violence, ADHD, trouble

concentrating, forgetfulness, misplacing things easily, insomnia, decreased

appetite, decreased energy, decreased interest in normal activities, and prior

suicidal ideations.  (AR 670).  His grandfather reported that plaintiff is scared of

people.  (AR 670).

Plaintiff had worked as a lot associate for Home Depot but stopped working

due to anxiety.  (AR 671).  Plaintiff lived with his grandfather who did all the

cooking and laundry, and helped plaintiff with activities of daily living by

reminding plaintiff to shower, put on clean clothes, and take his medications.  (AR

671).  On mental status examination, plaintiff was cooperative, depressed with a

dysphoric mood, was able to recall three of three items immediately and one of

three after five minutes, appeared to have somewhat below average intelligence,

could spell "world" both forward and backward, was unable to perform serial

threes, and could follow conversation well.  (AR 671-73).

Dr. Nicholson diagnosed unspecified anxiety disorder, ADHD, depressive

disorder, and an intellectual disability based on plaintiff's special education

history and plaintiff's mental status examination which showed deficits in

---

[4](...continued)
He spent his days watching television, reading, using the computer, going to school, napping,
fishing, playing video games, and playing with his dog.  (AR 644).

On mental status examination, plaintiff was anxious but cooperative, was able to recall
three out of three objects immediately and after five minutes, was not able to perform serial
sevens but could perform serial threes, and was able to spell "music" forward and backward.
(AR 644-45).  Dr. Durr diagnosed anxiety disorder (not otherwise specified), depressive disorder
(not otherwise specified), and noted to rule out post traumatic stress disorder.  (AR 645).  She
estimated plaintiff's intelligence to be in the average to low average range.  (AR 645).  She
opined that plaintiff:  (1) would be able to understand, remember, and carry out short, simplistic
instructions without difficulty, as well as detailed instructions, and make simplistic work-related
decisions without special supervision; (2) would have mild limits in his ability to comply with
job rules such as safety and attendance, respond to changes in a routine work setting, and respond
to work pressure in a usual work setting; and (3) would have mild inability to interact
appropriately with supervisors, coworkers, and peers.  (AR 646).

7

memory, concentration, and calculations.  (AR 673).  Intelligence testing would be needed to confirm the intellectual disability diagnosis.  (AR 673-74).  Dr. Nicholson opined that plaintiff:  (1) could understand, remember, and carry out simple one- and two-step job instructions; (2) would not be able to do detailed and complex instructions; (3) would have moderate limits in his relating and interacting with coworkers and the public, maintaining concentration and attention, persistence, and pace, and performing work activities without special or additional supervision; and (4) would have mild limits in accepting instructions from supervisors, maintaining regular attendance in the workplace, and performing work activities on a consistent basis.  (AR 674).

### 1.    The ALJ's Decision

The ALJ summarized Dr. Nicholson's opinion and found the opinion "persuasive in part," as from an acceptable medical source with program knowledge who personally examined plaintiff.  (AR 28).  The ALJ then stated:

> However, at the examination, the claimant reported working at a pumpkin patch where he enjoyed talking to people.  He was described as slightly anxious, but cooperative during the examination.  His speech was normal in tone, volume, and rate and clear and coherent. Based on the examination findings, the claimant would not have more than mild limitations in interact [sic] with others.

(AR 28).

### 2.    Pertinent Law

For claims filed after March 27, 2017 (such as plaintiff's claim), new regulations govern the evaluation of medical opinion evidence.  Under these regulations, ALJs no longer "weigh" medical opinions; rather, ALJs determine which opinions are the most "persuasive" by focusing on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of

treatment, and whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors.  <u>See</u> 20 C.F.R. § 416.920c(c)(1)-(5).

The two most important factors in determining the persuasiveness of medical opinions are supportability and consistency with the evidence.  <u>See</u> 20 C.F.R. § 416.920c(a).  ALJs must explain how they considered the factors of supportability and consistency, but need not explain how they considered any other factor.  <u>See</u> 20 C.F.R. § 416.920c(b).

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant. . . objective medical evidence."  Consistency means the extent to which a medical opinion is "consistent. . . with the evidence from other medical sources and nonmedical sources in the claim."

<u>Woods v. Kijakazi</u>, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1), (2)).  "[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  <u>Id.</u> at 792.[5]

### 3.   Analysis

Plaintiff asserts there were "several problems" with the ALJ's consideration of Dr. Nicholson's opinion.  (Plaintiff's Brief at 10).  The Court agrees.  It is not clear whether the ALJ's brief discussion of Dr. Nicholson's opinion addressed supportability or consistency as required under the new regulations.  Plaintiff correctly points out that to the extent the ALJ was making supportability findings

---

[5]The new regulations also eliminated the term "treating source," as well as the rule previously known as the treating source rule or treating physician rule, which formerly required special deference to the opinions of treating sources.  <u>See</u> 20 C.F.R. § 416.920c; <u>Woods</u>, 32 F.4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."); <u>see also</u> <u>Cross v. O'Malley</u>, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (discussing new regulations).

about Dr. Nicholson's opinion, the ALJ referenced Dr. Durr's examination findings (which Dr. Nicholson had reviewed), not Dr. Nicholson's findings. See Plaintiff's Brief at 10; compare AR 28 (ALJ's reasoning) with AR 646, 674 (Dr. Durr's and Dr. Nicholson's findings).

Defendant suggests other ways Dr. Nicholson's examination "did not fully support Dr. Nicholson's assessment that plaintiff was more limited" than the ALJ's RFC assessment for "simple, unskilled work with additional social limitations of no contact with the public and only brief, superficial contact with supervisors and coworkers." See Defendant's Brief at 10 (characterizing Dr. Nicholson's mental status examination as finding plaintiff had (1) appropriate thought content and clear and logical thought processes; (2) grossly intact recent memory, judgment and insight; (3) was able to follow conversation well; and (4) performed calculations well and was able to spell "world" forward and backward); compare AR 671-73 (Dr. Nicholson's mental status examination stating only some of these findings). Even if defendant's characterization of Dr. Nicholson's mental status examination was correct, the Court may not rely properly on reasons other than those specified by the ALJ in considering Dr. Nicholson's opinion. See Brown-Hunter, 806 F.3d at 494 (court is constrained to review only the reasons the ALJ specifically identified); cf. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (reversing district court's decision where the district court had affirmed on the basis of reasons supported by the record but unstated by the ALJ). Accordingly, the Court cannot properly credit defendant's suggestion for why Dr. Nicholson's opinion was unsupported.

Plaintiff also contends that the ALJ erred by failing to provide any reasons for discounting Dr. Nicholson's opinion that plaintiff was moderately limited in

1  other areas beyond interacting with others. Plaintiff mentions Dr. Nicholson's

2  finding that plaintiff would be capable of performing simple one- and two-step

3  instructions, but does not argue specifically the ALJ's failure to explain why he

4  did not adopt that finding. (Plaintiff's Brief at 7-12; Plaintiff's Reply at 4-5).

5  Defendant suggests that Dr. Nicholson's findings were adequately encompassed in

6  the ALJ's RFC assessment. (Defendant's Brief at 10-11).

7      The ALJ's limitation to simple, routine, and repetitive tasks is not the same

8  as the ability to perform simple one- and two-step tasks. See, e.g., Dumlao v.

9  Kijakazi, 2023 WL 11843726, at *4 (C.D. Cal. Dec. 15, 2023) (distinguishing

10 between one- to two-step tasks and a limitation to simple, routine, repetitive tasks)

11 (collecting cases); Perez v. Berryhill, 2018 WL 1918539, at *2 (C.D. Cal. Apr. 23,

12 2018) (finding limitation to "simple 1-2 step tasks" and "simple, routine tasks"

13 "not equivalent"); Garcia v. Colvin, 2016 WL 6304626, at *6 (C.D. Cal. Oct. 27,

14 2016) (noting a "material difference between 'simple, repetitive tasks' and 'easy 1,

15 2 step directions'"). The Ninth Circuit has found that a limitation to simple one-

16 to two-step (unskilled) tasks is more restrictive – such a limitation is typically

17 consistent with Level One reasoning jobs, and a limitation to "simple repetitive

18 tasks" is typically consistent with Level Two reasoning jobs. See Rounds, 807

19 F.3d at 1003 (holding that a limitation to "one-and two-step tasks" conflicts with

20 the demands of Level Two reasoning"); Grigsby v. Astrue, 2010 WL 309013, at

21 *2 (C.D. Cal. Jan. 22, 2010) ("Level 2 reasoning jobs may be simple, but they are

22 not limited to one-or two-step instructions. The restriction to jobs involving no

23 more than two-step instructions is what distinguishes Level 1 reasoning from

24 Level 2 reasoning.") (emphasis original); see also Perez, 2018 WL 1918539, at *2;

25 Garcia, 2016 WL 6304626, at *6. Thus, the ALJ's RFC determination is

26 inconsistent with Dr. Nicholson's opinion that plaintiff would be capable of

27 performing simple one- to two-step tasks.

28 ///

The vocational expert testified that a person with plaintiff's RFC for simple, routine, and repetitive tasks would be capable of working as a router, collator, and launderer.  (AR 63-64).  Each of the jobs the vocational expert identified involve Level Two or Level Three Reasoning.  See Router (DOT 222.587-038), 1991 WL 672123 (Level Two); Collator Operator (DOT 208.685-010), 1991 WL 671753 (Level Two); Spotter I (DOT 361.684-018, a laundering occupation), 1991 WL 672984 (Level Three).  On this record, the Court cannot find harmless the ALJ's failure to account for Dr. Nicholson's opinion about plaintiff's ability to perform one- and two-step instructions.

For all the foregoing reasons, the ALJ's findings in this case do not permit this Court to conclude that the ALJ properly considered Dr. Nicholson's opinion.

## B.    Other Considerations on Remand

The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  However, the Court observes that the ALJ's reasoning for rejecting plaintiff's testimony and statements could have been clearer.

Plaintiff had testified that he could not work because he gets extreme anxiety and panic attacks around "a lot of people."  (AR 106).  He did not know if he would be able to do a job where there is no customer interaction.  (AR 115).  He also did not know if he could work in a simple job that did not require him to work a lot with coworkers, was not fast-paced, and had no public contact – he would have to experience the job before he could answer.  (AR 56).  Plaintiff said he did not think he could work full time because of his anxiety which causes him to shake, go to the bathroom, sit down to calm down, and feel nervous and scared.  (AR 57-58).

Before detailing the medical record, the ALJ generally concluded, "[plaintiff's] statements about the intensity, persistence, and limiting effects of her

1  [sic] symptoms. . . are inconsistent because they are not substantially supported by
2  the medical evidence of record."  (AR 24).  The ALJ discussed the record but did
3  not relate any of the details in the record to plaintiff's subjective complaints, or
4  explain how the record undermined plaintiff's complaints.  (AR 24-29).

5      An ALJ may not reject a claimant's subjective complaints based solely on a
6  lack of medical evidence to fully corroborate those complaints.  See Burch, 400
7  F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for
8  discounting pain testimony, it is a factor the ALJ can consider in his [or her]
9  credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
10 (same); see also Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When
11 objective medical evidence in the record is inconsistent with the claimant's
12 subjective testimony, the ALJ may indeed weigh it as undercutting such
13 testimony.") (emphasis original); Carmickle v. Commissioner, 533 F.3d 1155,
14 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis
15 for rejecting the claimant's subjective testimony").

16      In this case, the only clear reason the ALJ gave for discounting plaintiff's
17 testimony and statements about his debilitating anxiety was a lack of supporting
18 medical evidence.  From the ALJ's discussion of the medical record, it is not
19 apparent that the ALJ provided specific reasons for discounting plaintiff's
20 testimony and statements.  An ALJ's reasoning should be sufficiently specific to
21 permit a reviewing court to conclude that the ALJ rejected plaintiff's testimony
22 and statements on permissible grounds and did not arbitrarily discredit the
23 testimony and statements.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
24 2004).
25 ///
26 ///
27 ///
28 ///

1  **V.    CONCLUSION**

2        For the foregoing reasons, the decision of the Commissioner of Social

3  Security is REVERSED and this matter is REMANDED for further administrative

4  action consistent with this Opinion.[6]

5        LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:  August 28, 2025

7

8                                    /s/

9                                    Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 ────────────────

26        [6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

27 Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in

28 Social Security cases) (citations omitted).